GILBERT M. BRADFORD *vs.* BOSTON AND MAINE RAILROAD.

Franklin.    September 19, 1916. — October 28, 1916.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Practice, Civil*, Conduct of trial: trial together of different cases, order of evidence, New trial, Experiments in jury room. *Evidence*, Materiality, Remoteness, Of record kept in course of business, Opinion: experts. *Jury and Jurors. Fire. Railroad*, Fire communicated by locomotive engine.

An order, directing that an action by the alleged owner of certain real estate against a railroad corporation for damage to the plaintiff's buildings by a fire alleged to have been communicated by a locomotive engine of the defendant shall be tried together with another action for the same alleged damage brought

by another person claiming to be the owner of the property damaged by fire, is a matter within the discretionary power of the presiding judge.

At the trial together of the actions mentioned above, the plaintiff in the first action was a witness for himself and, as the alleged owner of the buildings, was asked the value of the buildings destroyed by fire, and the presiding judge stated that, as it was a question who was the owner of the property, he would exclude the question for the present. *Held,* that this temporary exclusion of the evidence gave no ground for exception, because, if it appeared later in the trial that there was evidence for the jury of that plaintiff's title, that plaintiff could offer again his evidence of value.

In the cases above described the jury found that the fire was not communicated by a locomotive engine of the defendant, so that evidence of the extent of the damage and the value of the property became immaterial.

In the same cases tried together, it also was *held,* that questions relating to the admission of evidence in regard to the title of the respective plaintiffs to the property damaged by fire, each of whom contended that the property belonged to him and not to the other plaintiff, likewise had been made immaterial by the finding that the damage was not caused by the defendant.

In an action against a railroad corporation for damage to the plaintiff's buildings alleged to have been caused by a fire communicated by a locomotive engine of the defendant, a witness for the plaintiff was asked, "Whether or not you have seen fires set from other sparks from engines?" The presiding judge excluded the question. The same witness was permitted by the judge to testify to her knowledge of fires in the particular locality where the damage occurred caused by sparks from locomotive engines. *Held,* that there was no error in the exclusion of the question.

In the same case it appeared that the fire that caused the damage started in a certain mill belonging to a corporation which stood near the railroad track, and the defendant contended that the fire originated in the mill and was not caused by sparks from any of its engines. The treasurer and general manager of the mill corporation was a witness for the plaintiff and there was evidence tending to connect him with the cause of the fire. Subject to the plaintiff's exception the defendant was permitted to ask this witness on cross-examination whether the plant of the mill corporation standing in the same place was burned in the previous year. The witness also was permitted to testify that he had a trust deed of the property. *Held,* that this evidence properly might be admitted by the presiding judge in the exercise of his discretion, the evidence of the former fire tending to show the origin of the later one and the deed being admissible to explain the motive and intent of the witness if he had set the fire or caused it to occur.

In the same case it was *held,* that the admission of evidence that the mill corporation was insolvent and showing the amount of its debts, and the admission of evidence of the records of the corporation so far as they authorized the deed of trust to its treasurer and general manager, as well as the admission of evidence of what occurred at the meeting when this vote was passed, although the bearing of the evidence thus admitted was somewhat remote, could not be said to have constituted errors of law.

In the same case it was *held* that the judge properly refused to allow the plaintiff to ask the treasurer and general manager of the mill corporation, whom he had called as a witness, "Whether or not, before the fire [in question] his property

situated where the . . . mill [of the corporation] was burned, was injured by a fire communicated by sparks from an engine or a locomotive of [the defendant], causing a loss for which they adjusted with you?"

In the same case it was *held* that there was no error in the exclusion by the judge of a question, put by the plaintiff to this same witness, "How many buildings — wooden buildings — have you owned in your lifetime?" offering to show that the witness had owned a great many wooden buildings in various parts of New England and that the only fire he had had was in the place where this fire occurred and near the defendant's railroad.

In the same case it was *held* that the defendant's train dispatcher properly was permitted to testify from his record as to the time when trains passed the station in the town where the fire in question occurred, his record having been made up from information reported to him by telegrams from the agents at different stations to show the passing of trains, and having been kept by him in the usual course of business.

In the same case it appeared that the roof of the mill where the fire started was covered with a certain kind of roofing and that this roofing had been exposed to the weather for about a year and was broken in places. A witness, qualified as an expert, was asked by the plaintiff, If "there is a weak spot in that roof for a spark from an engine to lodge and eventually to set fire to the wood underneath, and the fire had been set, will you tell the jury whether or not it would be possible for that fire to smoulder undiscovered, before it broke out into flame, for a period of three quarters of an hour or more?" The judge excluded the question as asking for the opinion of the witness on a matter which was not one of expert knowledge. *Held*, that the exclusion was right, because the jury as men of ordinary experience had sufficient knowledge to pass on this question without the aid of expert testimony.

In the case above described the jury returned a verdict for the defendant, and the plaintiff moved to have the verdict set aside on account of alleged misconduct of the jury. An exhibit of the roofing material before its exposure to the weather had been put in evidence and was taken to the jury room. The question had been raised and discussed at the trial, whether the roofing material in use on the mill was inflammable. After the jury had left the jury room, a number of burnt matches were found there, and the plaintiff offered to show that the jury had experimented with the material and had attempted to light it. The presiding judge ruled that, even if this fact were established, it would not be a sufficient ground for disturbing the verdict. *Held*, that, assuming that the jury did test the material by trying to set it on fire and that this fact could have been shown without invading the privacy of the jury room and relying on the testimony of jurors, no such misconduct on the part of the jury was shown as to require a new trial, especially as there was nothing to show what the result of the experiment was or how the plaintiff could have been harmed by it.

CARROLL, J. On the eighteenth of June, 1912, a dwelling house and other property known as the Mann property, in the part of the town of Charlemont called Zoar, were damaged by fire. It was contended that a spark from one of the defendant's locomotives set fire to a mill of the Massachusetts Talc Company and that the

fire thence spread to the premises in question. In answer to a specific inquiry submitted to them, the jury found that, "The fire that damaged the Mann property" was not "communicated to that property by a locomotive engine of the Boston and Maine Railroad." The title was in dispute, one Fred R. Shaw and the plaintiff each claiming to be the owner. Shaw's action for damages was pending and by order of the judge,* the cases were tried together.

In 1909 the property was owned by Gilbert H. Mann. Shaw claimed title under a deed from the administrator of Dexter B. Cook, who was the purchaser at an execution sale. The administrator's deed to Shaw was executed July 22, 1913, subsequently to the fire. Mann died before the fire and by his will gave the whole estate to the plaintiff. The plaintiff also held a second mortgage thereon, and became the purchaser at the foreclosure sale under such mortgage after the fire.

The plaintiff's first exception is to the order directing the cases be tried together. This was a matter within the discretion of the judge and there was no error of law in the course taken by him. *Burke* v. *Hodge*, 211 Mass. 156. *Lumiansky* v. *Tessier*, 213 Mass. 182, 188.

The plaintiff was a witness and was asked the value of the buildings destroyed by fire. This evidence was excluded. Both cases were then on trial. Not knowing what the evidence of title would disclose, the judge stated that as it was a question who owned the property he would at present exclude the evidence. The matter was not again called to his attention. This exclusion was not a definite and final ruling entitling the plaintiff to an exception; if it later appeared that there was evidence of the plaintiff's title for the jury to pass on, the attention of the judge should have been called to the excluded testimony. *N. J. Magnan Co.* v. *Fuller*, 222 Mass. 530, 534. Apart from this, the finding of the jury that the fire was not caused by the defendant made the question, of the extent of the damages and the value of the property an immaterial one. *Cotter* v. *Nathan & Hurst Co.* 222 Mass. 433.

The plaintiff claiming title as devisee under the will of Gilbert H. Mann, the defendant was permitted to show that Mann's

---

* *Aiken,* C. J.

estate had been represented insolvent and the commissioners had been appointed; together with the amount of the debts according to the representation of insolvency and according to the return of the commissioners. Fred R. Shaw, the other plaintiff, offered in evidence a deed from the deputy sheriff to Cook, the plaintiff in this action excepting thereto, Shaw having derived his title from the administrator of Cook. All these questions of title are now of no importance because of the finding of the jury, and we need not consider them. The third, fourth, fifth and sixth exceptions are therefore overruled.

A witness was asked, "Whether or not you have seen fires set from other sparks from engines?" The question was excluded. The same witness was permitted to testify to her knowledge of fires in this particular locality caused by sparks from locomotives. This exception must be overruled. See *McGinn* v. *Platt,* 177 Mass. 125.

The evidence showed that the fire started in the mill of the Massachusetts Talc Company, which stood near the railroad track. Frederick K. Daggett was the treasurer and general manager of the talc company. He was a witness for the plaintiff, and testified that, shortly before noon on the day of the fire, he bought some cigars and matches and went upstairs to the second floor where the fire started. It was in evidence that a large amount of inflammable material was stored on this floor. At this time the machinery was running, none of the employees being present. Adney White, a school boy, testified that on the day of the fire he walked through the mill on his way home from school and saw Daggett on the stairway looking up to the second story; that some time after this, when the talc company's case was on trial,* he went to the office of Daggett's lawyer with Daggett who told him "not to say that at the time he saw him in the mill, on the day of the fire, he had an oil can in his hand, because he did not." Daggett was then asked on cross-examination, the plaintiff excepting, whether the plant of the talc company standing in the same place, was burned the year previous. He also testified that he had a deed of trust of the property. The deed was admitted in evidence. We

---

* This is the only reference in the record to an action against the Massachusetts Talc Company or to an action by that company against the railroad corporation.

think this evidence was admissible, within the discretion of the presiding judge.   The defendant contended it was not responsible for the fire; that it started in the mill of the talc company.   As a step toward showing its origin and cause the evidence of the former fire was admissible.   The deed was admissible as explaining the motive and intent of Daggett.   See *Everson* v. *Casualty Co. of America*, 208 Mass. 214; *Noyes* v. *Boston & Maine Railroad*, 213 Mass. 9.

While the question of the financial condition of the talc company and the admission of its records, which was confined to the vote authorizing the deed of trust to Daggett, as well as the evidence of what occurred at the meeting when this vote was passed, were somewhat remote, we cannot say in view of the nature of the issue involved that there was any error of law in the admission of the evidence.   This disposes of the eleventh, twelfth and thirteenth exceptions.

The plaintiff asked Daggett, "Whether or not, before the fire of June 18, 1912, his property, situated where the talc mill was burned, was injured by a fire communicated by sparks from an engine or a locomotive of the Boston and Maine Railroad, causing a loss for which they adjusted with you?"   This question was excluded.   It was entirely irrelevant whether the defendant had caused a previous loss which it had adjusted with Daggett or not.

The plaintiff also asked Daggett this question: "How many buildings — wooden buildings — have you owned in your lifetime?" the plaintiff offering to show that ever since Daggett was twenty-one years of age he had owned wooden buildings in various parts of New England, and that the only fire he ever had was in Zoar next to the Boston and Maine Railroad.   In the exclusion of this question we see no error in the ruling of the judge.

The defendant's train dispatcher at North Adams testified from his record as to the time when trains passed Charlemont station.   The record was made up from information reported to him by telegrams from the agents at different stations, showing the passing of trains, and was kept in the usual course of business. The plaintiff excepted to this evidence.   It was properly admitted. See *Donovan* v. *Boston & Maine Railroad*, 158 Mass. 450; therefore, the sixteenth exception is overruled.

It appeared that the roof of the talc mill was covered with a

substance known as Carey's Magnesia Roofing. This roofing had been exposed to the weather for about a year and was broken in places. Edward P. Harrison, qualified as an expert, was asked by the plaintiff, If "there is a weak spot in that roof for a spark from an engine to lodge and eventually to set fire to the wood underneath, and the fire had been set, will you tell the jury whether or not it would be possible for that fire to smoulder undiscovered, before it broke out into flame, for a period of three quarters of an hour or more?" The judge ruled that the matter was not one of expert knowledge, to which ruling the plaintiff excepted. We think the jury had sufficient knowledge to pass on this question without the aid of expert testimony. *Lyman* v. *State Mutual Fire Ins. Co.* 14 Allen, 329. *Higgins* v. *Dewey,* 107 Mass. 494. *Commonwealth* v. *Rodziewicz,* 213 Mass. 68.

The jury found for the defendant. The plaintiff filed a motion to set the verdict aside because of the misconduct of the jury. The motion was overruled, the plaintiff excepting. An exhibit of the roofing material before its exposure to the weather was in evidence, and was taken to the jury room. It was a question at the trial whether the roofing material in use on the building was inflammable. A number of burnt matches were found in the jury room and the plaintiff offered to show that the jury experimented with the material and attempted to light it. The judge ruled that, even if this fact were established, it would not be a sufficient ground for disturbing the verdict. Assuming that the jury did experiment and test the material by attempting to burn it and that this fact could be shown without invading the privacy of the jury room and relying on the testimony of the jurors (*Murdock* v. *Sumner,* 22 Pick. 156, *Woodward* v. *Leavitt,* 107 Mass. 453, 460, 471, *Simmons* v. *Fish,* 210 Mass. 563, 570, *Randall* v. *Peerless Motor Car Co.* 212 Mass. 352, 386) notwithstanding this, we are of opinion that there was no such misconduct on the part of the jury as to require a new trial. In the discussion and deliberation of the jury room, it is to be expected that some examination and inspection will be made of the exhibits in the case. The specimen of roofing material was properly before them and, even if matches were burned to test its inflammability, such action, especially where there is nothing to show the result of the experiment, is not so harmful as to require, as matter of law, the setting

aside of the verdict. See *Indianapolis* v. *Scott,* 72 Ind. 196, 205; *Burho* v. *Minneapolis & St. Louis Railway,* 121 Minn. 326.

*Exceptions overruled.*

*H. Sherman,* for the plaintiff.
*D. Malone,* for the defendant.