# Azinger, Appellant, *v.* Pennsylvania Railroad Company.

*Practice, C. P.—Trials—Ordering cases to be tried together—Consolidation—Judicial discretion.*

1. Where cases are of the same nature and arise out of the same transaction and depend upon substantially the same proofs, it is within the discretion of the trial judge, in the interest of justice, and for the purpose of avoiding unnecessary delay and expense, to order all to be tried together, although, in every other respect, the actions remain distinct and require separate verdicts and judgments.

2. Where a technical consolidation of actions takes place the result is that one verdict is rendered which is conclusive of the entire

subject-matter of the litigation. Different actions cannot be consolidated unless between the same parties and involving the same subject-matter, issues and defenses.

*Negligence—Railroads—"Stop, look and listen"—Automobile—Collision—Passengers—Failure to warn driver—Contributory negligence—Case for jury.*

3. When danger arising out of the operation of a vehicle by another is manifest to a passenger who has adequate opportunity to control the situation, if he sits without protest and permits himself to be driven to his injury, his negligence will bar recovery; but the passenger is not required to exercise the same degree of care in observing the roadway ahead of him, as is required of the driver of the vehicle; a passenger is only responsible for his actual negligence in joining with the driver in testing a danger he knows exists, and not for the result of mere inaction in failing to discover dangers of which he is ignorant, but might have discovered had he given attention to the roadway ahead of him.

4. In an action against a railroad company to recover for personal injuries sustained in a grade crossing accident where it appeared that plaintiff's husband was driving her in an automobile over a road unfamiliar to them both, that they were not aware of the crossing until within fifteen feet of it when they both observed it concurrently but the plaintiff did not call her husband's attention to it, the question of plaintiff's contributory negligence was for the jury and the court erred in charging in words that would be interpreted to mean that it was plaintiff's duty to observe at all times the roadway ahead of her in substantially the same manner as though she were driving the automobile.

Argued April 22, 1918. Appeal, No. 155, Jan. T., 1917, by plaintiff, Frances Azinger, from judgment of C. P. Blair Co., (June T., 1914, No. 163) Oct. T., 1916, No. 223, on verdict for defendant in case of Walter Azinger and Frances Azinger, his wife, in the right of Walter Azinger, and Frances Azinger, in her own right, v. Pennsylvania Railroad Company. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Reversed.

Trespass to recover damages for personal injuries. Before BALDRIGE, P. J.

The opinion of the Supreme Court states the facts.

Verdict for defendant and judgment thereon. Plaintiffs appealed.

*Errors assigned* were in ordering the cases of plaintiff and her husband to be tried together and instructions to the jury.

*R. A. Henderson,* with him *J. F. Sullivan,* for appellants.—The rule that a person about to cross a railroad track must stop, look and listen does not apply to a guest in a vehicle: Vocca v. Penna. R. R. Co., 259 Pa. 42; Baker v. Hagey, 177 Pa. 128; Ihrig v. Erie R. R. Co., 210 Pa. 98; Walsh v. Alt. L. V. E. Ry. Co., 232 Pa. 479; Jones v. L. & N. E. R. R. Co., 202 Pa. 81; Little v. Central District & Printing Tel. Co., 213 Pa. 229; Wachsmith v. B. & O. R. R. Co., 233 Pa. 465; Trumbower v. L. V. T. Co., 235 Pa. 397; Dunlap v. Philadelphia R. T. Co., 248 Pa. 130; Senft v. The Western Maryland Ry. Co., 246 Pa. 446.

*O. H. Hewitt,* with him *A. J. Riley, J. D. Hicks* and *Thos. H. Greevy,* for appellee.—The plaintiff was responsible for her own negligence which was the cause of the accident to her: Township of Crescent v. Anderson, 114 Pa. 643; Dean v. Penna. R. R. Co., 129 Pa. 514; Wachsmith v. B. & O. R. R. Co., 233 Pa. 465; Proctor v. Lehigh Val. Transit Co., 235 Pa. 373; Trumbower v. Lehigh Val. T. Co., 235 Pa. 397; Senft v. The Western Maryland Ry. Co., 246 Pa. 446; Dunlap v. Philadelphia R. T. Co., 248 Pa. 130; McLaughlin v. Pittsburgh Rys. Co., 252 Pa. 32; Hardie v. Barrett, 257 Pa. 42; Brommer v. Penna. R. R. Co., 179 Fed. Repr. 577.

OPINION BY MR. JUSTICE FRAZER, July 17, 1918:

Walter Azinger and his wife were injured by a collision with defendant's train at a grade crossing when an automobile in which they were riding, and driven by the husband, was struck by one of defendant's freight trains. Two actions were brought, one by the husband

for his injuries, and the other by the husband and wife for injuries received by the latter. The trial judge ordered the cases tried together, with the result that a nonsuit was entered against the husband in both actions and the claim of the wife submitted to the jury, who found in favor of defendant and from judgment entered on the verdict the wife appealed.

The first assignment of error complains of the action of the trial judge in directing the cases to be tried together. An order to that effect was made, following notice to plaintiff's attorney and, after argument, recited, "It appearing that no prejudice will result to the plaintiffs and that it is reasonable to consolidate" the two actions for trial before the same jury "it is therefore ordered and decreed that the said motion be and the same hereby is granted and the said cases are directed to be tried together, separate verdicts to be rendered in accordance with the practice in such cases established." The court's action was not such a consolidation of the two proceedings as to merge the two actions into one, but merely an order directing they be tried together in view of the fact that the cases were of the same nature, arose out of the same transaction and depended in each case upon substantially the same proofs, and was made in the interest of justice and for the purpose of avoiding unnecessary delay and expense.

A reference to the distinction between consolidation of two or more actions and ordering them tried together, is sufficient to show the action of the court was proper. The term "consolidation" is used in three different senses: first, where all except one of several actions are stayed until one is tried, in which case the judgment in the one is conclusive as to the others; second, where several actions are combined into one and lose their separate identity and become a single action in which a single judgment is rendered; and, third, where several actions are ordered to be tried together but each retains its separate character and requires the entry of a sepa-

rate judgment: Lumainsky v. Tessier, 213 Mass. 182. Failure in many cases to clearly distinguish between these various uses of the word has caused no little apparent confusion in the decisions. Where a technical consolidation takes place the result is that one verdict is rendered which is conclusive of the entire subject-matter of the litigation: 1 Corpus Juris, 1128, par. 324. Consequently, different actions cannot be consolidated unless between the same parties and involving the same subject-matter, issues and defenses: 1 Corpus Juris, 1124, 1127. But where separate actions in favor of or against two or more persons have arisen out of a single transaction, and the evidence by which they are supported is largely the same, although the rights and liabilities of parties may differ, it is within the discretion of the trial judge to order all to be tried together, though in every other respect the actions remain distinct and require separate verdicts and judgments.

The subject was fully discussed and numerous authorities cited by the Supreme Court of Massachusetts in Lumainsky v. Tessier, supra, where two actions at law were pending between a tenant and his landlord for damages for breach of covenant in the lease, and, subsequently, a proceeding in equity was begun to enjoin the landlord from collecting rent until the covenants in the lease should be performed. The court in the equity proceeding ordered the two actions at law to "be consolidated with this proceeding, and damages assessed herein, should any be found due, and that said two actions at law be heard with this suit at a session of the court without juries." Though the parties were the same the court held this was not a consolidation of the cases into one proceeding so as to merge the suits at law into the equity proceeding and separate judgments were properly entered: in other words, the effect of the order was merely to require the cases to be tried together. It was said (page 188): "Where several causes are pending between the same or different parties which grow out of a single transaction

or which involve an inquiry into the same event in the same general aspects, although the details of evidence may vary materially in fixing responsibility, the court may order them tried together. But they continue separate so far as concern docket entries, verdicts, judgments and all aspects save only the joint trial. This is a frequent practice, and finds many illustrations in our decisions."

The question is one that must necessarily be left to the discretion of the trial judge and where the issues are the same and they arise out of the same transaction, and it does not appear the trial of the cases together would tend to place the objecting party at a disadvantage, or give an undue advantage to his adversary, the action of the court in ordering the cases tried together will not be reversed: Benge's Adm. v. Fouts, 163 Ky. 796; Lumainsky v. Tessier, supra; Bradford v. Boston & Maine R. R., 225 Mass. 129; Realty Const. & Mortg. Co. v. Superior Court of San Joaquin Co., 165 Cal. 543; Reid v. Nichols, 166 Ky. 423. In Burke v. Hodge, 211 Mass. 156, six different actions by employees against their employer and a firm of independent contractors to recover for injuries sustained by plaintiffs by reason of the falling of a wall, were directed to be tried together and that order sustained on appeal.

The order in the present case was not a consolidation of the actions, strictly speaking, but merely an order directing they be tried together and expressly stipulating that separate verdicts be rendered. No abuse of discretion being shown the first assignment of error is overruled.

The remaining assignments question the correctness of parts of the charge in submitting the case to the jury and the answers to points. The uncontradicted testimony of plaintiff and her husband is to the effect they had not previously driven over the road, were unfamiliar with the locality and were not aware of the existence of the railroad crossing. They also testified the

crossing sign had become darkened and blurred to such extent as to be illegible. The wife stated her husband was a careful driver, that on this occasion he was driving at the rate of twelve to fifteen miles an hour and that the view of the approaching train was obstructed by houses and trees standing along the roadside. While the testimony of physical conditions at and near the crossing was contradictory, it is not disputed that Mrs. Azinger was unfamiliar with the locality and unaware of the existence of the crossing. She testified that as they approached the place she looked ahead along the side of the road and her attention was attracted to a horse and buggy standing at the side of the road almost at the point where it crossed the railway, and that she first saw the track at the time the automobile was fifteen feet distant from it and that the speed at which the car was traveling the moment she observed the railroad gave her no opportunity to warn her husband of the danger. The court charged: "It was her duty to see, to look, to exercise reasonable care and caution, that her husband was not rushing into some dangerous place; and if, by reasonable care, she could have seen the approach of the train, or could have heard the signals, it was her duty to notify her husband, 'here is a train, and stop the machine.' She could not sit idly by and permit her husband to test a manifest danger by accelerating the speed of the car to get by an approaching train; there was a duty imposed upon her to exercise care, and, if there was a patent or manifest danger ahead, and if she could have observed it by reasonable care and caution, then it was her duty to say to her husband, 'here is a danger ahead, stop the machine,' and if she failed to do that, she would be guilty of contributory negligence." This instruction will bear the interpretation that the court meant it was the wife's duty to observe at all times the roadway ahead of her in substantially the same manner as though she were driving the automobile; and, in view of the statement of this false standard of duty, the impression thus conveyed is

not removed by a subsequent instruction that if she "did all that a reasonably prudent person should have done under the circumstances surrounding the place of the accident, if she exercised watchfulness, if she was on her guard in the way she should have been, under the circumstances, then she did all that she was reasonably expected to do, and she would be free from negligence." The court also affirmed defendant's fourth point for charge, to the effect that "It is not important in this case that Mr. and Mrs. Azinger testified that they did not know the railroad crossing existed at the point of the accident, and for that reason they did not stop, look or listen as they approached the track. The defendant railroad company was not to blame for any ignorance in this respect upon the part of the Azingers. It was not the railroad company's duty to hunt the Azingers up and inform them of the location of the track. The railroad was where it had the lawful right to be, and it was plainly the duty of the Azingers to inform themselves in advance of possible dangers that may beset their way." The erroneous impression of the law thus conveyed was further emphasized by the affirmance of point No. 9½, as follows: "It was the duty of the occupants of the automobile to stop, look and listen and not the duty of the train to do so." The portion of the charge above quoted and the affirmance of these points necessarily had the effect of leading the jury to believe the law imposed upon the wife substantially the same measure of care as it imposed upon the driver. These instructions failed to make the wife's negligence depend on her actions in view of the knowledge she had of the existence of danger, but imposed upon her the duty of discovering possible danger ahead, thus holding her to substantially the same responsibility as the driver of the car. The rule established by our cases is that when danger arising out of the operation of a vehicle by another is manifest to a passenger who has adequate opportunity to control the situation, if he sits without protest and permits himself to be driven to

his injury, his negligence would bar a recovery. Such negligence is not the negligence of the driver imputed to him as a passenger but his own negligence in joining with the driver and testing manifest danger: Hardie v. Barrett, 257 Pa. 42, and cases there cited. An examination of the cases in which this rule has been applied shows the test of negligence of the passenger is his action or want of action in the face of danger which was manifest or known to him, or which it was his duty equally with the driver to observe. None of the cases goes so far as to hold the passenger is bound to exercise the same degree of care in observing the roadway ahead of him as is required by the driver of the vehicle. To so hold would be to say that every person occupying a position in a vehicle which would prevent a constant view of the roadway ahead is guilty of contributory negligence in the event of an accident that might have been prevented by the exercise of proper care on the part of the driver. Such ruling would, in effect, revive the old English doctrine of imputed negligence laid down in the leading English case of Thorogood v. Bryan, H. C. B. 115, but repudiated in this jurisdiction in Dean v. Railroad, 129 Pa. 514, and a long line of later decisions not expressly by the adoption of the rule of imputed negligence, but impliedly by holding the passenger himself negligent in failing to observe a situation it was his duty, as well as the duty of the driver, to notice. The tendency of our decisions is to hold a passenger responsible for his actual negligence in joining with the driver in testing a danger he knows exists, and not for the result of mere inaction in failing to discover dangers of which he is ignorant, but might have discovered had he been giving attention to the roadway ahead of him. Had Mrs. Azinger been familiar with the highway and known of the existence of the crossing and failed to remonstrate when she saw her husband approach the crossing without observing the usual precautions required of him by the law, or had she in ample time seen the train coming and made no protest

if her husband attempted to cross in front of it, she could then be justly charged with the responsibility of her own negligence, or of having joined in testing a manifest danger by taking the chances of a collision. While it is true when she discovered the existence of the crossing she gave no warning, yet her husband had apparently discovered it at the same time, or previously, and an interference on her part would not only have been useless but might have tended to increase the danger: Vocca v. Railroad, 259 Pa. 42, 45.

For the reasons stated the third, fourth and fifth assignments of error are sustained, the judgment reversed and a new trial granted.